United States District Court
Southern District of Texas
**ENTERED**
December 01, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BILL BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:20-CV-50 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION
### TO DISMISS CERTAIN CLAIMS, TO RETAIN CASE,
### AND TO DENY MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Bill Baker, a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. In this action, Plaintiff asserts claims under § 1983 and the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165 (ADA). He also has filed a Motion for Preliminary Injunction. (D.E. 25). Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) a deliberate indifference against **Dr. Christi Tupa** in her individual capacity based on her decision to rescind Plaintiff's medical locker box pass; and (2) an ADA claim against the **Texas Department of Criminal Justice (TDCJ)** based on Dr. Tupa's decision. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service on these defendants.

1

For the reasons set forth below, the undersigned further respectfully recommends that: (1) Plaintiff's claims for money damages against all individual Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims against Executive Director Bryan Collier be **DISMISSED without prejudice**; (3) Plaintiff's Motion for Preliminary Injunction (D.E. 25) be **DENIED**; and (4) Plaintiff's remaining claims against Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division and is currently housed at the Stevenson Unit in Cuero, Texas. Plaintiff's claims in this lawsuit occurred in connection with his current housing assignment.

On July 15, 2020, Plaintiff filed this prisoner civil rights action in the Marshall Division of the Eastern District of Texas. He sued TDCJ Executive Director Bryan, two prison officials from the Gurney Unit, two prison officials from the Buster Cole Unit, and Dr. Tupa from the Stevenson Unit. On August 4, 2020, Magistrate Judge K. Nicole

Mitchell from the Eastern District of Texas severed Plaintiff's claims against Dr. Tupa and transferred them to this Court. (D.E. 11).

At the Court's direction, Plaintiff filed an Amended Complaint in which he named Dr. Tupa and Executive Director Collier as defendants. (D.E. 23). Plaintiff claims that Defendants violated his Eighth Amendment and ADA rights. (D.E. 23, pp. 3-4). He seeks injunctive and monetary relief. (D.E. 23, p. 4).

On September 28, 2020, Plaintiff filed a Motion for Preliminary Injunction. (D.E. 25). While not entirely clear, Plaintiff asks the Court to compel prison officials at the Stevenson Unit to provide him with access to a proper bathroom for a disability shower and a medical locker box based on his disabilities. (D.E. 25, p. 1; D.E. 25-1, p. 2).

A *Spears*[1] hearing was conducted on September 29, 2020. The following representations were made either at the *Spears* hearing or in Plaintiff's Amended Complaint (D.E. 23): Plaintiff is 36 years old, stands 5'9" tall, and weighs 220 pounds. (D.E. 26, p. 4). Sometime in 2000, Plaintiff suffered injuries in a car accident involving an 18-wheeler truck. (D.E. 26, p. 8). Plaintiff required surgery for his left knee and femur. Plaintiff is disabled in his left wrist, hand, knee, and femur. Plaintiff has a rod and screws in his left femur as well as a screw in his left knee.

Plaintiff recently contracted an infection in his left knee following surgery in 2019. (D.E. 26, p. 7). Since the 2019 surgery, Plaintiff has suffered from numbness and

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

pain in his leg. Plaintiff receives Ibuprofen for pain and blood pressure medication. (D.E. 26, pp. 8-9).

Plaintiff arrived at the Stevenson Unit on March 17, 2020 and was housed in a medium security building. (D.E. 26, p. 6). Before his transfer to the Stevenson Unit, Plaintiff had been granted medical restrictions for no climbing, no squatting, no bending, and no reaching overhead. (D.E. 26, p. 12). He also was provided with a medical locker box during his confinement at the Stringfellow Unit. On April 16, 2020, Dr. Tupa initially issued Plaintiff a pass for a medical locker box. (D.E. 26, p. 9). She also issued Plaintiff passes for a walker and disability shower. (D.E. 26, pp. 14-15).

When Plaintiff visited the law library to obtain the medical locker box, Plaintiff was informed by Ms. Hernandez that the box was not allowed in his building due to his custody classification. (D.E. 26, p. 10). Plaintiff learned that Dr. Tupa had rescinded the medical locker box pass because he had storage space available to him in the cell where he was housed. (D.E. 26, p. 10). After discussing this matter with Ms. Hernandez from the law library, Dr. Tupa further informed Plaintiff that medical locker boxes were only issued to store medical supplies. (D.E. 26, p. 19). Plaintiff complains that Dr. Tupa improperly discussed Plaintiff's medical issues with Ms. Hernandez, in violation of the Health Insurance Portability and Accountability Act (HIPAA), Public Law No. 104-191, 110 Stat. 1936. (D.E. 26, pp. 23-24).

According to Plaintiff, the storage space in his cell is located underneath the bunks, which requires him to squat, climb, and reach overhead to access the contents

4

therein. Medical lockers in contrast open from the top, making it easier to reach down as opposed to climbing up and down every time access to storage is needed. (D.E. 26, p. 10). Plaintiff further testified that medical locker boxes generally are not issued for medical item storage purposes but instead due to an inmate's issue with climbing, squatting, and/or reaching overhead. The medical locker box pass initially issued by Dr. Tupa stated that the box should be within reach and not require either climbing or reaching overhead. (D.E. 26, p. 19). Inmates living in the minimum security building of the unit have been issued medical locker boxes. (D.E. 26, p. 19).

Plaintiff testified that he needs the medical locker box because his leg disability makes it difficult and painful for him to access the general storage space provided. Plaintiff's attempts to access the general storage space place a great strain on his left knee and femur. (D.E. 26, pp. 15-16). Plaintiff's attempt on one occasion to access a similar general storage space in another prison unit resulted in him falling over and hitting his head. (D.E. 26, p. 16). Plaintiff currently experiences numbness and pain when accessing the general storage space. (D.E. 26, pp. 16, 20-21).

Since his transfer to the Stevenson Unit, Plaintiff has been scheduled for a Orthopedics appointment for his leg issues. (D.E. 26, pp. 9, 11). This appointment has not yet taken place. Plaintiff is currently housed in a building that does not have a disability shower. (D.E. 26, p. 26). Plaintiff acknowledges, however, that Dr. Tupa has no authority with regard to housing decisions. (D.E. 26, p. 27).

Plaintiff asserts an ADA claim against Executive Director Collier based on inadequate intake procedures used for inmates with disabilities. (D.E. 26, pp. 27-28). Plaintiff did not receive a medical examination during the intake process. According to Plaintiff, the intake examination occurred at the Buster Cole Unit. (D.E. 26, p. 28). If Plaintiff had received a proper intake examination, he would have received appropriate housing for his disabilities and would have been released on parole by now. (D.E. 26, pp. 28-29).

## III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

## IV. DISCUSSION

### A. Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of

7

state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### *(1) Eleventh amendment immunity and Official Capacity*

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues the individual Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against

Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### *(2) Deliberate Indifference to Serious Medical Needs*

Plaintiff claims that Dr. Tupa acted with deliberate indifference to his serious medical needs. A constitutional violation under the Eighth Amendment occurs when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

### Rescission of Medical Locker Box Pass

Plaintiff alleges that Dr. Tupa rescinded her earlier decision to issue a medical locker pass because Plaintiff had storage space available to him in the cell where he is housed and because medical locker boxes were only issued to store medical supplies. However, Plaintiff's allegations further reflect that: (1) he suffers from serious disabilities to his left knee and leg; (2) he was provided with medical restrictions to limit his climbing, squatting, or reaching overhead; (3) Dr. Tupa issued the medical locker box pass initially because it would not require Plaintiff to climb or reach overhead; (4) the general storage space in contrast requires Plaintiff to squat, climb, and reach overhead to access the contents in the space; (5) Plaintiff's attempt to access the general storage space has caused him to suffer numbness and pain in his left leg; and (6) on one previous

occasion, Plaintiff fell over and hit his head when attempting to access a similar general storage space in another unit.

Accepting Plaintiff's allegations as true, he has stated a claim of deliberate indifference to his serious medical needs against Dr. Tupa. Plaintiff's allegations suggest that Dr. Tupa's decision to rescind his medical locker box may have exacerbated the risk of serious harm to him. Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against Dr. Tupa in her individual capacity, relating to the rescission of the medical locker box pass, be retained.

### Disability Shower

Plaintiff appears to claim that Dr. Tupa acted with deliberate indifference to his medical needs because he is housed in a building that does not have a disability shower. (D.E. 26, p. 26). Plaintiff, however, alleges that he has not suffered any injuries as a result of not being able to access a disability shower.

Furthermore, Plaintiff acknowledges that Dr. Tupa issued him a disability shower pass and has no authority with regard to housing decisions. (D.E. 26, p. 27). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). Plaintiff, therefore, has failed to allege any specific facts to suggest that Dr. Tupa had authority over or otherwise personally participated in denying Plaintiff a disability shower. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Dr. Tupa, related to

11

disability showers, be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

**B.  HIPAA**

Plaintiff complains that Dr. Tupa violated the HIPAA, the federal medical-records privacy statute, by discussing Plaintiff's medical issues with Ms. Hernandez.  HIPAA, however, does not create a private cause of action.  *Barnes v. Brownlow*, No. 6:08cv194, 2008 WL 2704868, at *4 (E.D. Tex. July 7, 2008) (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)).  *See also Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (per curiam) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action.").  Accordingly, the undersigned respectfully recommends that Plaintiff's HIPAA claim be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

**C.  ADA**

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669,  672 (5th Cir. 2004).  That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person.  *Tennessee v. Lane,* 541 U.S. 509, 531

(2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA.

### (1) Executive Director Collier

Plaintiff asserts ADA claims against Executive Director Collier based on inadequate intake procedures used for inmates with disabilities. (D.E. 26, pp. 27-28). Plaintiff alleges that he did not receive a medical examination during the intake process and that the intake examination occurred at the Buster Cole Unit. (D.E. 26, p. 28).

Plaintiff's allegations against Executive Director Collier reference events that occurred before Plaintiff was transferred to the Stevenson Unit. Plaintiff raised his ADA claims against Executive Director Collier in his original complaint filed in the Eastern District of Texas. (D.E. 1, pp. 1, 3). In her August 4, 2020 Order, Magistrate Judge Mitchell from the Eastern District of Texas only severed Plaintiff's claims against Dr. Tupa and transferred them to this Court. (D.E. 11). Because she did not sever and

13

transfer Plaintiff's ADA claims against Executive Director Collier, Plaintiff must pursue such claims in his action filed in the Eastern District of Texas. Accordingly, the undersigned respectfully recommends that Plaintiff's ADA claim against Executive Director Collier be dismissed without prejudice.

### (2) Dr. Tupa

Liberally construed, Plaintiff asserts an ADA claim in connection with Dr. Tupa's decision to deny Plaintiff a medical locker box. While Plaintiff did not separately name the TDCJ as a defendant, it is the appropriate defendant for this type of claim. *See McCoy v. Tex. Dep't Crim. Justice*, No. C-05-370, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006). *See also Steele v. Thaler*, No. H-09-4076, 2011 WL 739524, at *2 (S.D. Tex. Feb. 22, 2011) (recognizing that plaintiffs cannot sue individual defendants under Title II of the ADA).

Plaintiff alleges, as discussed above, reflect that: (1) he is disabled in his left knee and femur; (2) he has been issued medical restrictions limiting activity such as climbing, squatting, or reaching overhead; (3) Dr. Tupa denied him a medical locker box which would have given him easy access to the contents therein; and (4) Dr. Tupa's decision forced him to use the general storage space which required him to squat, climb, and reach overhead. Plaintiff's allegations, accepted as true, suggest that Dr. Tupa's action in rescinding his medical locker box pass denied him a reasonable accommodation for his disability and caused Plaintiff unnecessary harm. Accordingly, the undersigned respectfully recommends retaining this ADA claim against the TDCJ.

### D. Motion for Preliminary Injunction

In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Plaintiff seeks preliminary injunctive relief in the form of being provided access to a proper bathroom for a disability shower and a medical locker box based on his disabilities. (D.E. 25, p. 1; D.E. 25-1, p. 2). Plaintiff's motion fails to warrant the extraordinary remedy of a preliminary injunction.

While Plaintiff has alleged facts sufficient to state deliberate indifference and ADA claims with regard to Dr. Tupa's conduct in rescinding Plaintiff's medical locker box pass, he has failed to show at this time a substantial likelihood that he will prevail on these claims. Furthermore, he has failed to demonstrate a substantial threat of an irreparable injury. Plaintiff's allegations of potential serious harm do not amount to a

constitutional violation, and in the absence of such a violation, federal courts are reluctant to interfere in the internal affairs of a state prison. *See Richie v. UTMB Hospital Galveston*, No. 2:12-CV-322, 2012 WL 12871940, at *2 (S.D. Tex. Oct. 18, 2012) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)).

Moreover, interference with the operations of the Stevenson Unit at this early stage in the proceedings would not be in the public's interest without a without a full opportunity for the facts to be developed beyond Plaintiff's allegations. *See Kahey*, 836 F.2d at 951. Should Plaintiff be able to prove a constitutional violation to a trier of fact, then permanent injunctive relief might be appropriate at some point in the future.

Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Preliminary Injunction (D.E 25) be denied.

## V. RECOMMENDATION

For purposes of § 1915A, Plaintiff has alleged sufficient facts that, if true, state (1) a deliberate indifference against **Dr. Tupa** in her individual capacity based on her decision to rescind Plaintiff's medical locker box pass; and (2) an ADA claim against the **TDCJ** based on Dr. Tupa's decision. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service as to **Dr. Tupa** and the **TDCJ** by separate order.

The undersigned further respectfully recommends that: (1) Plaintiff's claims for money damages against all individual Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims against

Executive Director Bryan Collier be **DISMISSED without prejudice**; (3) Plaintiff's Motion for Preliminary Injunction (D.E. 25) be **DENIED**; and (4) Plaintiff's remaining claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted on December 1, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).